UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| KALA WINN, | § | |
|---|---|---|
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 3:18-CV-02949-E |
| CLEBURNE INDEPENDENT SCHOOL DISTRICT, | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Cleburne Independent School District's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. No. 9). For the following reasons, the Court **GRANTS** in part and **DENIES** in part the motion to dismiss.

### BACKGROUND

The following allegations are taken from plaintiff Kala Winn's First Amended Complaint. Cleburne Independent School District (CISD) hired Winn in 2011; Winn taught ESL and English classes and, in 2014, became head softball coach at Cleburne High School. She received "excellent observations and summatives over the years." However, Winn alleges she was subjected to "a difference in treatment and discriminated against because she is a female" after Le'Ann Downs became Cleburne High School principal in 2016.

1

In August 2017, Winn was required to teach more classes than the male coaches and, unlike male coaches, had to teach at both the high school and the middle school. Winn "tried to clear up the schedule issues" with her supervisor Mark Walker, who told her to contact Downs. After Winn complained about the unfair schedule, Downs and Walker called her into an August 25, 2017 meeting, during which Downs told Winn not to call the United Educators Association and that Winn did not want to make Walker, Walker's wife, or the CISD superintendent "mad." Downs also asked if Winn wanted to lose her job. Winn alleges it was clear the meeting was "meant to warn her about making complaints about the schedule or other issues." After the meeting, Downs attempted to intimidate Winn by walking through Winn's class and asking Winn's husband about "things [Winn] said in the meeting."

In September 2017, Winn received a letter showing her salary within the 0-5-year pay scale despite the fact she was a seven-year CISD employee. She also worked twelve days over her 187-day contract without pay. Winn alleges a salary spreadsheet shows male teachers were paid according to or above their experience level and were offered stipends and other incentives for work beyond the 187-day contract.

In November 2017, Winn made a formal complaint about her unfair pay; thereafter, Downs began to scrutinize her more than male coaches and teachers. On December 18, 2017, Winn was called into a meeting to discuss an email Winn had sent. Although she did not receive a formal write-up at the end of the meeting, she received a write-up in January 2018. Downs said Winn was written up for asking to be excused from the meeting to call the attorney representing her in a union grievance. Winn alleges the following conduct also occurred in January 2018: (1) Downs sent Winn an email for not taking attendance within five minutes of class starting when,

at the time, Winn had been helping a wheelchair-bound special needs student to class; (2) there were five different "walk-throughs" of Winn's classes by Downs and other administrators; (3) Downs sent Winn an email about an issue with keys; (4) assistant principal Rina Ramos was told to warn Winn about praying at school; and (5) Downs sent Winn an email about a grade missing for one student.

Winn also alleges she was treated differently than male employees when it came to complaints, investigations and administrative leave. On February 23, 2018, Winn was placed on administrative leave for a parent complaint, but she was never told the substance of the complaint. Conversely, when several female students complained a male coach made inappropriate comments and touched them inappropriately, he was neither placed on administrative leave nor investigated.

In February 2018, Winn was demoted from her head coaching position and replaced by Paul Chavez, a male.

Winn asserts claims under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. Section 1983 against CISD, alleging unlawful employment practices on the basis of sex. CISD previously moved to dismiss Winn's original complaint, and Winn responded by filing an amended complaint (Doc. Nos. 7 & 8). CISD now has filed its second motion to dismiss, asserting the majority of allegations in Winn's amended complaint remain unchanged and her claims should be dismissed (Doc. No. 9).

LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

3

8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." *Id.* 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). "The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim *and* referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citation omitted)).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, a claim "is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679); *see also Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019).

ANALYSIS

1. *Sex Discrimination*

Under Title VII, it is an unlawful employment practice to "discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). To assert a sex discrimination claim under Title VII, a plaintiff must demonstrate that: (1) she was a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) after the adverse employment action, she was replaced by someone not a member of the protected class or that others similarly situated and outside of the protected class were more favorably treated. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). For a sex discrimination claim, "adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating." *See id.* at 559. Further, the adverse employment action must be "*because of*" the plaintiff's membership in a protected class. *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019). The plaintiff need not "make out a prima facie case of discrimination in order to survive a Rule 12(b)(6) motion to dismiss," but must "plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make his claim plausible." *English v. Purdue*, 777 F. App'x 94, 99 (5th Cir. 2019) (quoting *Raj v. La. State Univ.*, 714 F.3d 322, 329–30 (5th Cir. 2013)); *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016).

CISD asserts Winn has not adequately pleaded her sex discrimination claim because she alleged only three specific instances of unlawful employment practices that are not "extremely serious or pervasive and do not amount to discriminatory changes in [Winn's] terms and

conditions of employment." However, Winn alleges she received "excellent" employee reviews and CISD intentionally engaged in unlawful employment practices, which included paying her less than similarly-situated male employees and demoting her and replacing her with a male coach. Taken as true and viewed in the light most favorable to Winn, the Court finds she has sufficiently pleaded a plausible claim for disparate treatment discrimination, specifically alleging facts showing she has suffered adverse employment actions because of her membership in a protected class. Accordingly, the Court **DENIES** CISD's motion to dismiss Winn's sex discrimination claim.

*2. Retaliation*

Title VII's anti-retaliation provision makes it an unlawful employment practice to discriminate against an employee because the employee "has opposed any practice made an unlawful employment practice by this subchapter" or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To state a claim for retaliation, a plaintiff must plead that (1) she engaged in activity protected by Title VII, (2) she suffered a materially adverse employment action, and (3) there was a causal link between the protected activity and the adverse employment action. *Jenkins v. City of San Antonio Fire Dep't*, 784 F.3d 263, 269 (5th Cir. 2015).

CISD seeks to dismiss Winn's retaliation claim because she failed to identify the protected activity she engaged in with any particularity and her conclusory allegation that retaliation was due to the protected activity was based only on her subjective belief. Winn's amended complaint alleges only two possible protected activities: her complaint of an unfair workload and her subsequent formal complaint of unfair pay. However, Winn did not allege these complaints were

made in opposition to any practice made unlawful by Title VII. "[A]n employee cannot simply complain that she received unfair or undesirable treatment." *Carter v. Target Corp.*, 541 F. App'x 413, 418 (5th Cir. 2013) ("vague complaint that does not reference a discriminatory employment practice does not constitute protected activity"); *Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x 485, 493 (5th Cir. 2011) (per curiam) (statement that employer created a "hostile work environment" did not constitute protected activity when complaint lacked racial or gender basis). Because Winn alleges only vague complaints of "unfairness" and does not allege opposition to unlawful employment practices under Title VII, her amended complaint fails to state a retaliation claim.

CISD also asserts Winn failed to plead facts sufficient to raise a plausible inference of a causal link between any alleged protected activity and an adverse employment action. Winn cites her heavier schedule and work load as adverse employment actions, but those pre-date her complaints to CISD and, therefore, cannot be causally linked to those complaints. The Court further finds the classroom walk-throughs, emails, and meetings alleged by Winn are not "materially" adverse as required for a retaliation claim. *See Burlington N. & Santa Fe Ry. Co v. White*, 548 U.S. 53, 68 (2006) (an employee's engagement in a protected activity "cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience"). However, Winn also alleged she was placed on leave without explanation and demoted only months after she complained about her work conditions and pay. Had Winn properly pleaded a protected activity, the Court finds these allegations, taken as true and viewed in the light most favorable to Winn, are sufficient to plead a causal connection to one or more adverse employment actions. *See Garcia v. Prof'l Contract Servs., Inc.*,

938 F.3d 236, 243 (5th Cir. 2019); *McCoy*, 492 F.3d at 562 (a plaintiff alleging retaliation may satisfy the causal connection element of a *prima facie* case by showing "[c]lose timing between an employee's protected activity and an adverse action against him").

Because Winn did not adequately plead a protected activity, the Court **GRANTS** CISD's motion to dismiss Winn's retaliation claim.

*3. Hostile Work Environment*

To establish a hostile work environment claim, a plaintiff must show: (1) she belongs to a protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment was sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999) (op. on reh'g). When the alleged harasser is a supervisor with immediate or higher authority over the plaintiff, the plaintiff need only meet the first four elements of the test. *Id.*

A court must consider the totality of the circumstances to determine whether a work environment is sufficiently hostile. *See Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). Relevant factors include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (citations omitted). "The environment must be deemed both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998). "[S]imple teasing, . . .,

offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* at 788 (internal quotation marks and citations omitted).

Winn's amended complaint alleges CISD made her "work environment hostile by increasing her schedule and workload, scrutinizing her more than other male coaches, threatening her in meetings, writing her up, demoting her and putting her on administrative leave." She also complains of not being paid "according to her years of experience." CISD asserts the amended complaint does not plead facts to support the third and fourth elements of her claim because it does not allege CISD's conduct was based on her sex or sufficiently severe or pervasive.

Although Winn has pleaded some discriminatory conduct, she has not alleged facts showing frequent or severe discriminatory acts that could lead a reasonable jury to conclude the conduct was sufficiently hostile to create an abusive working environment. Instead, she has alleged facts showing isolated acts and communications, all of which appear to be connected to her work duties and job performance. Because Winn has failed to plausibly allege facts to establish severe or pervasive harassment, the Court finds her amended complaint does not state a claim for hostile work environment. The Court **GRANTS** CISD's motion to dismiss Winn's hostile work environment claim.

4. *Section 1983 Claims*

A plaintiff may sue a governmental entity that has violated the plaintiff's constitutional rights "under color of any statute, ordinance, regulation, custom, or usage." *Advanced Tech. Bldg. Solutions, L.L.C. v. City of Jackson*, 817 F.3d 163, 165 (5th Cir. 2016) (quoting 42 U.S.C. § 1983

and citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). To state a claim under section 1983 against a school district, the "complaint must allege sufficient factual content to permit the reasonable inference (1) that a constitutional violation occurred and (2) that an 'official policy' attributable to the school district's policymakers (3) 'was the moving force' behind it." *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 622–23 (5th Cir. 2018) (citations omitted).

Official policy is defined as:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [district] . . . or by an official to whom the [district] ha[s] delegated policy-making authority; or

2. A persistent, widespread practice of [district] officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents [district] policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the [district] or to an official to whom that body had delegated policy-making authority.

*Eugene v. Alief Indep. Sch. Dist.,* 65 F.3d 1299, 1304 (5th Cir. 1995). Under Texas law, the final policymaking authority in an independent school district rests with the district's trustees. *See Jett v. Dallas Indep. Sch. Dist.,* 7 F.3d 1241, 1245 (5th Cir.1993) ("Texas law is clear that final policymaking authority in an independent school district . . . rests with the district's board of trustees.") (citing TEX. ED. CODE ANN. § 23.01 (recodified at TEX. ED. CODE ANN. § 11.051)).

A governmental entity cannot be liable for civil rights violations under a theory of respondeat superior. *Monell*, 436 U.S. at 691; *see also Barrow v. Greenville Indep. Sch. Dist.*, 480 F.3d 377, 380 (5th Cir. 2007) ("A school district has no vicarious liability under § 1983."). Rather, "the unconstitutional conduct must be directly attributable to the [entity] through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will

almost never trigger liability." *Piotrowski v. City of Houston*, 237 F.3d 569, 578 (5th Cir. 2001). The official complained of must possess "final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–82 (1986). "[W]hether an official had final policymaking authority is a question of state law." *Id.*

Winn's amended complaint does not identify any policy statement, ordinance, regulation or decision or any persistent, widespread practice of CISD officials or employees that is so common and well-settled as to constitute a custom that fairly represents CISD policy. Instead, she complains of conduct by staff at Cleburne High School, none of which she alleges are on CISD's board of trustees. Although she asserts that conduct was done in the "normal and routine course and scope" of their employment and "with the full authorization or ratification" of CISD, CISD cannot be liable under a theory of respondeat superior and Winn pleads no facts to support authorization or ratification. *See Barrow*, 480 F.3d at 380 ("school district has no vicarious liability under § 1983"); *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 413 (5th Cir. 2015) ("even assuming the alleged customs, policies, and failures to train existed among [Marion ISD] employees, '[t]here is no evidence that the Board knew of this behavior or condoned it'") (citations omitted). Accordingly, the Court finds Winn's amended complaint does not plead enough facts to stats a section 1983 claim that is plausible on its face. The Court **GRANTS** CISD's motion to dismiss Winn section 1983 claim.

CONCLUSION

For the foregoing reasons, the Court finds CISD's motion to dismiss (Doc. No. 9) should be and is hereby **GRANTED in part** and **DENIED in part**. The Court **GRANTS** the motion to dismiss Winn's retaliation, hostile work environment, and section 1983 claims and **DISMISSES**

11

those claims **without prejudice**. The Court notes Winn already has amended her complaint once. However, if she can, in good faith, replead facts to support those claims, she may do so on or before January 23, 2020. *See* FED. R. CIV. P. 15(a)(2). If she does not replead those claims, the disposition of those claims will be converted into dismissal with prejudice. The Court **DENIES** CISD's motion to dismiss Winn's sex discrimination claims.

**SO ORDERED**.

Signed January 2, 2020.

_____
ADA BROWN
UNITED STATES DISTRICT JUDGE