UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KALA WINN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:18-CV-02949-E |
| | § | |
| | § | |
| CLEBURNE INDEPENDENT SCHOOL DISTRICT, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Cleburne Independent School District's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. No. 20). Having carefully considered the motion, the parties' briefing, and applicable law, the Court finds the motion should be granted in part and denied in part.

BACKGROUND

The following allegations are taken from plaintiff Kala Winn's Second Amended Complaint (Doc. No. 19). Cleburne Independent School District (CISD) hired Winn in 2011; she taught ESL and English classes and, in 2014, became head softball coach at Cleburne High School. She received "excellent observations and summatives over the years." However, Winn alleges she was subjected to "a difference in treatment and discriminated against because she is a female" after Le'Ann Downs became Cleburne High School principal in 2016.

1

In August 2017, Winn was required to teach more classes than the male coaches and, unlike male coaches, had to teach at both the high school and the middle school. Winn "tried to clear up her schedule issues" with her supervisor Mark Walker, who told her to contact Downs. Downs and Walker scheduled an August 25, 2017 meeting.

The morning of the meeting, Walker tried to contact Winn repetitively by phone and text, causing her to feel "threatened." Thereafter, he "barg[ed] into the girls' locker room to speak with Winn. He told her "she was not in trouble," but he became irritated and stood in the doorway of her office, so she had to "squeeze" by to exit. Later, during the meeting, Downs told Winn not to call the United Educators Association and that Winn did not want to make Walker, Walker's wife, or the CISD superintendent "mad." Downs also asked if Winn wanted to lose her job. Winn alleges it was clear the meeting was "meant to warn her about making complaints about the schedule or other issues." After the meeting, Downs attempted to intimidate Winn by walking through Winn's class, asking Winn's husband, who was a football coach at the school, about "things [Winn] said in the meeting," and sending Winn's husband a voicemail and two texts, one of which was "inappropriate."

In September 2017, Winn received a letter showing her salary within the 0-5-year pay scale despite the fact she was a seven-year CISD employee. She also worked twelve days over her 187-day contract without pay. Winn alleges a salary spreadsheet shows male teachers were paid according to or above their experience level and were offered stipends and other incentives for work beyond the 187-day contract.

On October 4, 2017, Winn circulated a memo pointing out the disparity in allocation of booster club funds between boys' and girls' teams. Citing Title IX, Winn wrote that the girls deserve "so much more" and do not feel supported.

On October 5, 2017, Winn spoke with Walker about why new male employees with less experience were paid the same as or more than Winn was paid. Walker directed her to CISD Human Resources Director Kyle Boles. In an October 10, 2017 meeting with Boles, Winn raised complaints that people with less experience were making more money than her, coaches were required to work days for which they were not paid, her stipend did not adequately cover the extra days, and she did not receive pay for field maintenance like softball coaches in other districts. They discussed her pay disparity with one new male employee. According to Winn, Boles explained how the district calculated raises and, in an effort to attract good teachers and coaches, "could end up" paying newer employees more. After the discussion, Winn filed "a formal discrimination union grievance" about her unfair pay and schedule. The union filed a formal retaliation grievance in January 2018.

Thereafter, Downs began to scrutinize Winn more than the male coaches and teachers. On December 18, 2017, Winn was called into a meeting to discuss an email Winn had sent. Winn later received a write-up because she had asked to be excused from the meeting to call the attorney representing her in the union grievance. Winn alleges the following conduct also occurred in January 2018: (1) Downs sent Winn an email for not taking attendance within five minutes of class starting when, at the time, Winn had been helping a wheelchair-bound special needs student to class; (2) there were five different "walk-throughs" of Winn's classes by Downs and other administrators; (3) Downs sent Winn an email about an issue with keys; (4) assistant

3

principal Rina Ramos was told to warn Winn about praying at school; and (5) Downs sent Winn an email about a grade missing for one student.

Winn also alleges she was treated differently than male employees when it came to complaints, investigations and administrative leave. On February 23, 2018, Winn was placed on administrative leave for a parent complaint, but she was not told the substance of the complaint until May 2018. Conversely, when several female students complained a male coach made inappropriate comments and touched them inappropriately, he was neither placed on administrative leave nor investigated.

In February 2018, Winn was replaced by Paul Chavez, a male.[1] She was asked to resign several times in February and March 2018. In March, she was given a letter "demoting her from her coaching position and assigning her to an elementary school to teach ESL."

Winn filed a charge of discrimination with the Equal Employment Opportunity Commission on April 9, 2018. On April 25, 2018, Winn was assigned to teach ESL and soccer at a middle school. This "demotion" was embarrassing for her. On June 12, 2018, Winn received a Formal Reduction in Pay letter. She was "constructively discharged" on July 23, 2018. Winn cites her reasons for leaving CISD as her "unwarranted placement on administrative leave, two retaliatory transfers in an attempt to constructively discharge [her], and the recent confirming demotion not only in position, but in salary."

Winn's Second Amended Complaint asserts sex discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq*. CISD previously moved

---

[1] The Second Amended Complaint does not state the position from which Winn was "replaced," but her First Amended Complaint alleged she was replaced as head softball coach.

to dismiss Winn's original complaint, and Winn responded by filing a First Amended Complaint (Doc. Nos. 7 & 8). CISD also moved to dismiss the First Amended Complaint, and the Court granted the motion as to Winn's retaliation, hostile work environment, and Section 1983 claims, but denied the motion as to her sex discrimination claim (Doc. Nos. 9 & 15). The Court allowed Winn the opportunity to amend her pleadings. Now, CISD again moves to dismiss, asserting the majority of Winn's allegations remain unchanged and she has failed to remedy the deficiencies in her First Amended Complaint and administratively exhaust her remedies with respect to the new allegations.

LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." *Id.* 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). "The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citation omitted).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

5

statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, a claim "is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679); *see also Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019).

ANALYSIS

*1. Sex Discrimination*

In her Second Amended Complaint, Winn alleges CISD's paying her less than similarly situated male employees and not according to her experience level, giving her more classes and a heavier schedule than male employees, placing her on administrative leave for pretextual reasons and not doing the same for male employees, and demoting her and replacing her with a male coach constitute unlawful employment practices. She also alleges she suffered adverse employment actions, including constructive discharge, because she is female. CISD moves to dismiss Winn's sex discrimination claim because she did not exhaust her administrative remedies with respect to the alleged demotions and constructive discharge and the details in the Second Amended Complaint show that Winn did not suffer an adverse employment action.

Under Title VII, it is an unlawful employment practice to "discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). To assert a sex discrimination claim under Title VII, a plaintiff must demonstrate that: (1) she was a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and

(4) after the adverse employment action, she was replaced by someone not a member of the protected class or that others similarly situated and outside of the protected class were more favorably treated. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). For a sex discrimination claim, adverse employment actions include only "ultimate employment decisions" such as hiring, granting leave, discharging, promoting, and compensating. *See id.* at 559. Further, the adverse employment action must be "*because of*" the plaintiff's membership in a protected class. *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019). The plaintiff need not "make out a prima facie case of discrimination in order to survive a Rule 12(b)(6) motion to dismiss," *English v. Purdue*, 777 F. App'x 94, 99 (5th Cir. 2019) (quoting *Raj v. La. State Univ.*, 714 F.3d 322, 329–30 (5th Cir. 2013)), but must "plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make his case plausible." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016).

Before filing suit in district court, a Title VII plaintiff must exhaust her administrative remedies by filing a timely charge of discrimination with the EEOC identifying the employment practices she is challenging. 42 U.S.C. § 2000e-5(e)(1), (f)(1); *Davis v. Fort Bend Cty.*, 893 F.3d 300, 303 (5th Cir. 2018). This serves the primary purpose of triggering the EEOC's investigatory and conciliatory procedures "in an attempt to achieve non-judicial resolution" of claims. *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006). A Title VII suit "is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* A court must construe the charge "somewhat broadly," looking beyond its four corners to its "substance rather than its label." *Id.* at 788–89.

CISD first contends Winn did not exhaust her administrative remedies with respect to

her March 2018 demotion because her charge attributes the demotion to disability discrimination and a sex discrimination claim could not reasonably be expected to grow out the allegations. Winn filed her EEOC charge in March 2018, alleging discrimination based on race, sex, religion, and retaliation (Doc. No. 22-2).[2] In April 2018, she amended her charge, repeating the allegations in the original charge and adding a paragraph alleging disability discrimination (*Id.*). Specifically, the amended charge alleges she "was subjected to a difference in treatment and demoted due a perceived disability." She asserts management questioned her co-workers and students, and commented to Winn and others, about her "health and mental stability" (*Id.*). Management also met with her on or about March 26, 2018, and asked if she prayed. Winn believed she was "recently demoted as part of the continued discrimination and retaliation against [her]" (*Id.*). Winn's only mention of the March 2018 demotion is in the new paragraph asserting a disability discrimination complaint. In that paragraph, however, she also generally attributes the demotion to "the continued discrimination and retaliation against her," and her charge also alleges sex discrimination. Construing the charge somewhat broadly, the Court finds Winn administratively exhausted her sex discrimination claim related to the March demotion.

CISD next contends Winn failed to administratively exhaust her sex discrimination claim related to the alleged April 2018 demotion, subsequent reduction in pay, and constructive discharge. The Court agrees. These were discrete events for which Winn was required to supplement or amend her EEOC charge. *See Phillips v. Caris Life Scis., Inc.*, 715 F. App'x 365,

---

[2] CISD attached copies of Winn's original and amended EEOC charges to its motion to dismiss (Doc. Nos. 22-1 & 22-2). Because the Second Amended Complaint refers to her charge and it is central to her claims, the Court may consider the documents in resolving the motion to dismiss. *Lone Star Fund V (U.S.)*, 594 F.3d at 387.

369 (5th Cir. 2017); *Simmons-Myers v. Caesars Entertainment Corp.*, 515 F. App'x 269, 273 (5th Cir. 2013). Because Winn did not notify the EEOC of her complaints regarding these events, she failed to administratively exhaust her sex discrimination claim with respect to them.

The Court previously found that Winn had adequately pleaded a claim for sex discrimination based on her allegations that she was paid less, had a heavier workload, and was treated differently with respect to administrative leave than similarly-situated male employees. She has repleaded those allegations in her Second Amended Complaint, and CISD does not address the allegations regarding her pay and workload. CISD, however, asserts Winn's paid administrative leave[3] does not constitute an adverse employment condition. Paid administrative leave, without more, generally does not constitute an adverse employment action. *See McCoy*, 492 F.3d at 560–61. However, the Fifth Circuit has recognized that paid administrative leave may constitute an adverse employment action when such leave carries "the stigma of the suspicion of wrongdoing and possibly significant emotional distress" and/or "negatively affect[s] an [employee's] chances for future advancement." *Id.* Here, Winn alleges facts to show she was placed on administrative leave, without the proper procedures being following, due to a parent complaint. While on leave, she was asked to resign and replaced as head softball coach. Further, she was treated differently than male co-workers with respect to administrative leave. The Court finds Winn has alleged facts to show her leave constituted an adverse employment action and stated a sex discrimination claim related to her leave.

CISD also asserts the Second Amended Complaint fails to sufficiently allege that her demotions, reduction in pay, and constructive discharge were adverse employment actions.

---

[3] Winn's EEOC charge states that she was paid while on leave (Doc. No. 22-2).

Generally, a reassignment that does not affect salary, benefits, or duties does not constitute an adverse employment action. *See Pegram v. Honeywell, Inc.*, 361 F.3d 272, 283 (5th Cir. 2004) (claim that reassignment was "a less prestigious or desirable transfer" does not establish adverse employment action), *abrogated in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). However, an employee transfer may be an adverse employment action if the change makes the job "objectively worse." *Id.* Here, Winn alleges a change to her duties, including loss of her head coaching position, and, at least with respect to her reassignment to the middle school, a reduction in pay for the 2018-2019 school year. Accordingly, the Court finds dismissal of her sex discrimination claims would be inappropriate on the ground that she did not plead an adverse employment action with respect to the reassignments. And, because Winn alleges the basis for her constructive discharge[4] involves her placement on leave and the demotions, the Court likewise finds dismissal of her sex discrimination claim related to the constructive discharge would be inappropriate.

Viewed in the light most favorable to Winn, the Court finds the Second Amended Complaint sufficiently pleads a plausible claim for disparate treatment discrimination with respect to her salary, schedule, administrative leave, and the March 2018 reassignment. However, because she failed to exhaust her administrative remedies, Winn fails to state a claim for sex discrimination with respect to her April 2018 reassignment, the subsequent reduction in pay, and her alleged constructive discharge.

---

[4] "The constructive-discharge doctrine applies when "an employer discriminates against an employee to the point such that [the employee's] working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Green v. Brennan*, 136 S. Ct. 1769, 1776 (2016) (internal quotation marks & citation omitted).

*2. Retaliation*

Winn's Second Amended Complaint alleges she was retaliated against after she complained of an unfair workload, complained and filed union grievances regarding her pay and retaliation, distributed her memo regarding the disparity in funding the girls' softball team, and filed her EEOC Charge. CISD contends Winn's retaliation claims fails because she does not allege any protected activity prior to filing her EEOC charge and she did not exhaust her administrative remedies with respect to those materially adverse employment actions she alleges occurred after she filed the charge. CISD also asserts Winn fails to allege any retaliatory act that was materially adverse.

To state a claim for retaliation, a plaintiff must plead that (1) she engaged in activity protected by Title VII, (2) she suffered a materially adverse employment action, and (3) there was a causal link between the protected activity and the adverse employment action. *Jenkins v. City of San Antonio Fire Dep't*, 784 F.3d 263, 269 (5th Cir. 2015). "[A] plaintiff need not make out a prima facie case of retaliation in order to survive a Rule 12(b)(6) motion to dismiss," *Raj*, 714 F.3d at 331, but must plead facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

A plaintiff engages in a "protected activity" when the plaintiff "oppose[s] any practice made an unlawful employment practice"[5] under Title VII or "ma[kes] a charge, testifie[s],

---

[5] It is an unlawful employment practice for an employer–

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would

11

assist[s], or participate[s] in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3. And, a plaintiff must allege facts showing the employer was aware of the protected activity; otherwise, there can be no causal connection between the protected activity and any adverse employment action taken by the employer. *Watts v. Kroger Co.*, 170 F.3d 505, 512 (5th Cir. 1999). A "materially adverse employment action" is one that "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *White*, 548 U.S. at 68.

The Second Amended Complaint alleges generally that Winn "tried to clear up her schedule issues" with Walker and Downs in August 2017. It is not sufficient to complain generally of "unfair or undesirable treatment." *Carter v. Target Corp.*, 541 F. App'x 413, 418 (5th Cir. 2013) ("vague complaint that does not reference a discriminatory employment practice does not constitute protected activity"); *Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x 485, 493 (5th Cir. 2011) (per curiam) (statement that employer created a "hostile work environment" did not constitute protected activity when complaint lacked racial or gender basis). Because Winn pleads no facts to show she was opposing sex discrimination in her discussions with Walker and Downs, she has not pleaded a protected activity with respect to her schedule complaints.

Winn alleges new facts showing she had discussions with Walker and Boles regarding a disparity between her salary and the salary of at least one newly-hired male coach. However, she describes complaining to Boles about (1) "people" with less experience than her making the same

---

> deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex or national origin.

42 U.S.C. § 2000e-2(a).

or more than her, (2) coaches being required to work days for which they were not paid and her stipend not adequately covering the extra days, and (3) not receiving pay for field maintenance like softball coaches in other districts. After presenting her complaints to Boles, she filed a "formal discrimination union grievance about her unfair pay and schedule" and the union thereafter filed a formal retaliation grievance. Despite being given an opportunity to replead after failing to sufficiently allege a protected activity, Winn still does not explicitly plead that either her complaints to Boles or the grievances were in opposition to sex discrimination. Indeed, she does not plead anything about the substance of her grievances. Accordingly, the Court finds the Second Amended Complaint does not state a protected activity with respect to these complaints.

Although Winn's October 2017 memo about the disparity in funding allocated to the girls' softball team may have raised Title IX concerns, her complaints were unrelated to discriminatory employment practices. Title VII "provides no remedy for retaliation against individuals who raise charges of noncompliance with the substantive provisions of [T]itle IX." *Slabisak v. Univ. of Tex. Health Sci. Ctr. at Tyler*, No. 4:17-CV-597, 2018 WL 1072511, at *3 (E.D. Tex. Feb. 27, 2018) (quoting *Lowery v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 249 (5th Cir. 1997)). "Instead, 'Title VII prohibits retaliation only against individuals who oppose discriminatory employment practices or participate in complaints or investigations of employment practices prohibited by [T]itle VII.'" *Id.* Accordingly, distributing the October 2017 memo was not a protected activity that can serve as a basis for Winn's retaliation claim.

Winn's filing of the EEOC Charge does constitute a protected activity under Title VII. CISD, however, asserts that Winn failed to exhaust her administrative remedies with respect to

the retaliatory acts she alleges took place as a result of her filing the charge.[6] The materially adverse employment actions by CISD that Winn alleges occurred after she filed her EEOC charge are her reassignment to a middle school on April 25, 2018, the subsequent reduction in pay with the reassignment, and her constructive discharge. As discussed above, these were discrete events that Winn was required to, but did not, administratively exhaust by supplementing or amending her EEOC charge. *See Phillips*, 715 F. App'x at 369; *Simmons-Myers*, 515 F. App'x at 273.

Winn asserts that, because these events were in retaliation for filing her charge, there is no exhaustion requirement pursuant to *Gupta v. East Texas State Univ.,* 654 F.2d 411 (5th Cir. 1981). Under *Gupta*, a plaintiff may "proceed in district court on an unexhausted retaliation claim if that claim is alleging retaliation for properly bringing an exhausted claim before the district court." *Sapp v. Potter*, 413 F. App'x 750, 752 (5th Cir. 2011); *Gupta,* 654 F.2d at 414. Winn, however, is not asserting retaliation by CISD for bringing her claims in district court. Further, the *Gupta* exception does not apply when a plaintiff alleges that the same adverse employment action was the result of both discrimination and retaliation. *Simmons-Myers*, 515 F.

---

[6] CISD also asserts that, even had Winn's previous complaints constituted protected activity, she fails to allege any resulting retaliatory conduct on the part of CISD that was materially adverse. Winn complains of Walker's bullying behavior before, alleged threats during, and conversations, messages, and texts after the August 2017 meeting, frequent classroom walk-throughs, emails, additional work requirements, and an unwarranted write-up. Although unpleasant, the Court finds the conduct alleged does not constitute acts that would dissuade a reasonable worker from making or supporting a charge of discrimination. *See White*, 548 U.S. at 68 (employee's engagement in a protected activity "cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience"). However, Winn also alleges she was placed on leave without explanation and demoted only months after she complained about her work conditions and pay. Had Winn properly pleaded a protected activity, the Court finds these allegations, taken as true and viewed in the light most favorable to Winn, are sufficient to allege a materially adverse action related to her administrative leave, removal as head softball coach, and reassignment to the elementary school. *See Garcia v. Prof'l Contract Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019); *McCoy*, 492 F.3d at 562 (plaintiff alleging retaliation may satisfy the causal connection element of a *prima facie* case by showing "[c]lose timing between … protected activity and an adverse action against him").

App'x at 273–74; *Sapp*, 413 F. App'x at 752–53. Here, Winn's Second Amended Complaint clearly alleges these events were both retaliatory and discriminatory. Accordingly, the Court finds Winn did not administratively exhaust her retaliation claims related to the April 2018 demotion, the reduction in wages, and her constructive discharge.

Because Winn did not adequately plead a protected activity other than her EEOC charge and she failed to exhaust her administrative remedies as to the retaliation alleged following her filing of the charge, the Court finds CISD's motion to dismiss Winn's retaliation claim should be granted.

3. *Hostile Work Environment*

Winn's Second Amended Complaint does not explicitly allege a hostile work environment claim, but it refers to a number of events as "[r]etaliation and [h]ostile work environment." Thus, to the extent Winn asserts a claim for hostile work environment, CISD moves to dismiss it because she has failed to set forth sufficient allegations to state a claim upon which relief may be granted. Winn does not dispute this, or otherwise address a hostile work environment claim, in her response to CISD's motion to dismiss.

In order to establish a prima facie case of harassment constituting a hostile work environment, a plaintiff must show: (1) she belongs to a protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment was sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *E.E.O.C. v. Boh Bros. Constr. Co., L.L.C.*, 731 F.3d 444, 453 (5th Cir. 2013). A court must consider the totality of the circumstances to determine

whether a work environment is sufficiently hostile. *See E.E.O.C. v. WC&M Enter., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007). Relevant factors include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Id.* (citations omitted). "The conduct complained of must be objectively and subjectively offensive"; thus, the environment must be one that both the plaintiff finds, and a reasonable person would find, hostile or abusive. *Id.*

Winn's Second Amended Complaint alleges additional harassing conduct by CISD employees that was not included in her previous complaints. The Court, however, still finds she has not alleged facts showing frequent or severe discriminatory acts that could lead a reasonable jury to conclude the conduct was sufficiently hostile to create an abusive working environment. Because Winn has failed to plausibly allege facts to establish severe or pervasive harassment, the Court finds her amended complaint does not state a claim for hostile work environment.

## CONCLUSION

For the foregoing reasons, the Court finds CISD's motion to dismiss (Doc. No. 20) should be **GRANTED in part** and **DENIED in part**. The Court **GRANTS** the motion to dismiss Winn's retaliation and hostile work environment claims and, because she has had three opportunities to state those claims, **DISMISSES** them **with prejudice**. The Court **DENIES** CISD's motion to dismiss Winn's sex discrimination claim, but only with respect to her allegations of unfair pay, workload, placement on administrative leave, demotion as head softball coach, and the March 2018 reassignment to the elementary school. In all other respects, the Court **GRANTS** CISD's motion to dismiss Winn's sex discrimination claim and **DISMISSES** the

claim **with prejudice** with respect to her allegations related to the April 2018 reassignment, the subsequent reduction in pay, and her constructive discharge.

    **SO ORDERED**; signed September 3, 2020.

_____
ADA BROWN
UNITED STATES DISTRICT JUDGE